UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROBERT SPEARS,                          )
                                        )
                Petitioner,             )
                                        )
        v.                              )        CAUSE NO. 3:13-CV-016 RM
                                        )
SUPERINTENDENT                          )
                                        )
                Respondent.             )

OPINION AND ORDER

Robert Spears, a *pro se* prisoner, filed a petition for writ of habeas corpus pursuant

to 28 U.S.C. § 2254 which raises three grounds to challenge his two convictions and

sentences for dealing in controlled substances by the Marion Superior Court under cause

number 49G20-0510-FB-184297. The respondent briefed those issues and filed the state

court record. Mr. Spears has filed a traverse.

FACTS

In deciding this habeas petition, the court must presume the facts set forth by the

state courts are correct unless rebutted by the petitioner with clear and convincing

evidence. 28 U.S.C. § 2254(e)(1). On direct appeal, the Court of Appeals of Indiana set forth

the facts regarding these convictions as follows:

> The evidence most favorable to the convictions is that Spears regularly
> sold tablets of hydrocodone (Vicodin) and alprazolam (Xanax) to his niece,
> Shannon Welsh, for over a year. Welsh also occasionally sold pills she
> obtained from Spears to other persons and gave the proceeds to Spears.
> Welsh knew that Spears had his prescriptions for the drugs filled towards the

end of each month, and the two would arrange to meet shortly thereafter for Welsh to obtain some pills. Sometimes Welsh initiated the contact, and sometimes Spears did.

At some point, Welsh and her family obtained a protective order against Spears because of allegedly threatening behavior towards them. Welsh and her family contacted law enforcement for assistance with Spears's alleged threats. Indianapolis Metropolitan Police Department ("IMPD") Detective Noble Duke met with Welsh and her family several times to discuss Spears. At one of these meetings, Welsh told Detective Duke about Spears selling controlled substances. Eventually, Welsh agreed to make a controlled buy of drugs from Spears as a way "to try to help Welsh's family with their problems." Tr. p. 286.

On October 25, 2005, Welsh contacted Detective Duke to let him know that Spears probably had medication in his possession. Welsh went to an IMPD district office, where she was thoroughly searched by a female officer. Officers also thoroughly searched Welsh's vehicle. No contraband was found on Welsh or in her car. She was given money that was photocopied beforehand and outfitted with a transmitting device.

Welsh drove directly to Spears's home in Indianapolis, followed by IMPD officers. Detective Duke parked where he could see the rear of Spears's home and another group of officers were parked where they could see the front. When Welsh pulled up to Spears's house he was standing outside. Welsh asked Spears if he had any pills, and Spears responded that he wanted to drive around the block to see if there were any police officers observing them. Spears drove around the block in his truck, with Welsh following in her car. Officers observed Welsh driving, although they temporarily lost sight of her at one point. At the end of the block, Welsh drove up beside Spears and told him she did not see anybody, and they both drove back to Spears's house and went inside.

No one else was inside the home aside from Welsh, Spears, and Spears's four-year-old son. Officers could not directly see Spears's back door for some of the time Welsh was inside, but over the transmitter they heard no one enter the house while Welsh was there. Welsh again asked if Spears had any pills for sale, and he said that he did. She requested ten Xanax and six Vicodin pills, which he gave to her in exchange for fifty dollars. Welsh then left and drove directly to a pre-arranged location, followed by Detective Duke. Welsh gave Detective Duke six pills containing hydrocodone, a schedule III controlled substance, and nine pills containing alprazolam, a schedule IV controlled substance. A search of Welsh and her vehicle uncovered no other contraband. Police then went to Spears's house and arrested him. During a search incident to arrest, officers found on Spears's

person two prescription bottles containing hydrocodone and alprazolam, and cash that matched the buy money provided to Welsh.

DE 10-2 at 2-5 (brackets omitted).

In his traverse, Mr. Spears raises numerous factual disputes.[1] He spends many pages setting forth an alternative factual history and drawing alternative conclusions based on those facts. He argues that he didn't sell drugs to Shannon Welsh for over a year, but she testified that he did. He argues that she didn't sell pills for him and give him the money, but she testified that she did. He argues that she didn't meet with Detective Noble Duke several times and tell him about those drug transactions, but she testified that she did. He argues that she didn't contact Detective Duke on October 25, 2005 because she believed that Mr. Spears had pills to sell, but Detective Duke testified that she did. Mr. Spears argues that opinions of the Court of Appeals of Indiana incorrectly identified the date of the controlled buy as October 25, 2005 – rather than October 24, 2005 – but the testimony at trial repeatedly identified the correct date. Moreover, a scrivener's error in the appellate opinions has no bearing on the merits of the claims in Mr. Spears's habeas corpus petition.

Mr. Spears argues that IMPD officers didn't follow Shannon Welsh when she drove directly from the police station to his house for the controlled buy, but both she and Detective Duke testified that she didn't make any stops that weren't allowed by the police. Moreover, Sergeant Miller, Detective Duke, and Detective Reed testified that they were members of the Indianapolis Metropolitan Police Department and that they followed her

---

[1] Mr. Spears also raises legal objections in his traverse that will be addressed during the discussion of the grounds he as presented in support of his habeas corpus petition.

as she drove to the controlled buy. Mr. Spears argues that she didn't agree to participate in the controlled buy to help her family because they had been threatened by Mr. Spears, but she testified that she did. He argues that officers couldn't verify that they didn't hear anyone enter the house during the controlled buy, but Detective Duke testified testified that he did not hear anyone go into or out of the house during the controlled buy. Mr. Spears argues that Ms. Welsh didn't ask him to purchase ten Xanax and six Vicodin pills in exchange for $50.00, but she testified that she did. He argues that Detective Duke didn't follow her when she left the house after the controlled buy, but Detective Duke testified that he did. Moreover, Ms. Welsh testified that "I really don't remember." He argues that she bought ten Xanax pills, but only gave nine of them to Detective Duke, but she testified that "[h]e might not have gave it to me" and "[h]e could have miscounted." He argues that Ms. Welsh testified that her car was not searched after the controlled buy, but her testimony was, "[t]hey looked in it. I guess not – not a search. I really don't remember. They looked in there. I don't remember if they – I don't remember." In addition, Detective Reed testified that he searched the car, and Detective Duke corroborated that testimony. Mr. Spears argues that officers didn't find two prescription bottles containing hydrocodone and alprazolam as well as cash matching the buy money when they searched him, but Detective Duke testified that they did. Mr. Spears argues that he didn't request that the jury hear the entire recording of the controlled buy, but his trial lawyer did on his behalf. He argues that his trial counsel didn't present evidence about a federal gun investigation to the jury even though the judge ruled that she could do so, but he must know that such

evidence was ultimately excluded because he explains that "[t]he fact is Spears testified because . . . the court changed its ruling about the gun case . . .."

Mr. Spears argues that his prior criminal history should have been inadmissible under any circumstances because his conviction was more than ten years old and it was unrelated to whether he was guilty of the current charges, but he had been released from prison on in February 2005, and Indiana Rule of Evidence 609(b) (like the federal rule) allows the introduction of such evidence when less than ten years have passed since the, "conviction or release from confinement for it, whichever is later." Moreover, Mr. Spears's prior criminal history would be relevant if he wanted to demonstrate that he was being investigated for being a felon in possession of a magazine for a firearm.

Mr. Spears argues that there was no foundation for the state court to conclude that the search was sufficiently controlled, but the testimony of Mr. Welsh and four police officers (Noble Duke, Chris Reed, David Miller, and Paul Arkins) during the suppression hearing provided the court with plenty of information about the controls implemented during the controlled buy. Mr. Spears argues that Ms. Welsh was promised leniency in return for her testimony against him, but she testified that she wasn't. Moreover, Mr. Spears hasn't identified anything in the record indicating such a promise other than his own conjecture. He argues that his trial lawyer didn't impeach Ms. Welsh with her prior deposition testimony about whether she and her car were searched after the controlled buy, but she was impeached on those subjects.

Mr. Spears hasn't satisfied the requirements of 28 U.S.C. § 2254(e)(1) because he hasn't provided clear and convincing evidence that the facts found by the Court of Appeals of Indiana are incorrect. So too, he hasn't satisfied the requirements of 28 U.S.C. § 2254(d) by demonstrating that the state courts made an unreasonable determination of the facts in light of the evidence presented. The court must accept as true those facts that were found by the Indiana courts.

Other facts, relevant to the particular claims raised by Mr. Spears in his habeas corpus petition, will be provided as needed.

GROUND 1

In Ground 1, Mr. Spears argues that he was denied the effective assistance of trial counsel for five[2] reasons:

(1) [A] Counsel failed to conduct a professional investigation into the facts and circumstances surrounding the federal entrapment scheme whereby ATF agents planted illegal gun accessories in Spears' house to return Spears to prison. When that scheme failed, State agents charged Spears with allegedly selling his prescribed Vicodin and Xanax drugs to his niece, a long-term drug addict. [B] Counsel failed to present material and relevant evidence to the jury, namely the fact that the prosecutor and the lead detective made a deal with the niece to forego charging her with possession of drugs, theft, and armed robbery in exchange for her cooperation in planting the illegal gun accessories in Spears house under the pretext of buying Spears prescribed medications. [C] Counsel further failed to challenge the inadequate controls of the alleged drug buy.

(2) Counsel failed to properly cross-examine and impeach police officers with inconsistent statements that clearly demonstrated the fabricated

---

[2] The respondent accurately notes that Ground 1-(1) contains three separate alleged acts of ineffectiveness (DE 10 at 17) which are identified here as [A], [B], and [C].

testimony of police officers and their involvement in a conspiracy to entrap Spears with false evidence.

    (3) Counsel failed to conduct professional interviews of available defense witnesses who could have testified to material and relevant evidence that Spears niece, the long-term drug addict, was not a credible or reliable witness, and that the niece had been coerced by the State to cooperate in planting false evidence in exchange for not being charged for thefts, armed robbery, and other felonies.

    (4) Counsel failed to object and challenge multiple versions of drug buy recordings and transcripts on the alleged drug buy that were not authenticated by any audio expert.

    (5) Counsel failed to object and challenge the paid testimony of the niece, working as a confidential informant, and failed to properly cross-examine and impeach the informant with prior bad acts.

DE 1 at 4-5.

Because the Court of Appeals of Indiana adjudicated these ineffective assistance of trial counsel claims on the merits, habeas corpus relief can't be granted unless that adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "In order for a federal court to find a state court's application of [United States Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" Wiggins v. Smith, 539 U.S. 510, 520-521 (2003) (citations omitted).

"Judicial scrutiny of counsel's performance must be highly deferential." Strickland v. Washington, 466 U.S. 668, 689 (1984). "[A] court must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case." Id. (quotation marks and citations omitted).

> However, counsel need not be perfect, indeed not even very good, to be constitutionally adequate. As we noted, Strickland has two prongs, both of which must be satisfied to succeed on an ineffectiveness claim. A defendant must show that his attorney performed below minimal professional standards and that the substandard performance prejudiced him. Under AEDPA, establishing that a state court's application of the Strickland standard was unreasonable is a tall task, and only a clear error in applying Strickland will support a writ of habeas corpus.

McAfee v. Thurmer, 589 F.3d 353, 355-356 (7th Cir. 2009) (quotation marks and citations omitted). "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010). "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult [because] the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 131 S. Ct. 770, 778 (2011). The Court of Appeals of Indiana correctly identified and applied the Strickland standard to each of Mr. Spears's claimed instances of ineffectiveness. In each instance, the court reasonably explained how his lawyer satisfied the Strickland standard.

In addressing the claim raised in Ground 1-(1)[A] that his trial counsel didn't properly investigate the ATF's effort to entrap him in a gun crime, the Court of Appeals of Indiana explained:

Spears next maintains that Zahn failed to introduce evidence of the gun clip as part of the entrapment defense. Notwithstanding this contention, Zahn's trial strategy was to pursue the entrapment defense using only evidence concerning the pills. Zahn developed this theory through Welsh's testimony that she worked with Detective Duke to eliminate problems that Welsh and her family were having with Spears, and Detective Duke also echoed this theory during his cross-examination. Tr. p. 113-15, 286. Zahn also had Welsh admit that Detective Duke had contacted her, and Zahn elicited testimony from Detective Duke that his sole source of information regarding the fact that Spears had been supplying Welsh with pills for a year was Welsh—someone with whom Detective Duke had never worked before. And the entrapment defense was the theme of Zahn's closing argument.

Zahn knew about the gun clip and Spears's opinion about it. However, the record shows that Zahn made a conscious decision not to pursue a defense strategy that involved the gun clip because such evidence could have opened the door to evidence of Spears's criminal history, including the fact that he had recently served an executed sentence for a federal gun-related conviction. In our view, Zhan's strategy was not unreasonable, because that evidence would have negatively impacted Spears's credibility. Moreover, Spears has failed to show that the gun clip had much—if any—relevance to the drug charges that he was facing. And Spears's claim of prejudice consisted only of his unsupported claim that had the jury known about the gun clip, he would have been acquitted. Such bald assertions do not meet a petitioner's burden on appeal to show, by a preponderance of the evidence, prejudice as a result of purported professional errors. Henley v. State, 881 N.E.2d 639, 643 (Ind. 2008). For all of these reasons, Spears's claim of ineffective assistance of counsel fails with regard to evidence involving the gun clip.

DE 10-3 at 15-16.

Mr. Spears argues that this is wrong because "Zahn's theory at trial was never to pursue an entrapment defense on the pills," but during closing, counsel discussed the pills and argued, "The reason that I'm bringing up that Shannon said all this, and you never heard the defendant offer any, is because of entrapment. That's our defense, entrapment." Counsel also stated during the PCR hearing that the theory of the defense was "to go

9

forward with entrapment for the drug buy." Mr. Spears repeatedly argues that Ms. Zahn abandoned a trial strategy based on the federal gun investigation without regard for concerns about opening the door to his prior criminal history and character, but trial counsel testified during his PCR hearing that "[m]y fear was if we talked about the gun charge and Mr. Spears wanted to go with entrapment on the gun charge, then that opens his whole criminal history and he does have firearm convictions. You know they would have to show that he wasn't predisposed to handling and having and owning firearms. As so that was my fear and that's why we didn't – why I chose not to present that evidence on the gun or the gun clip." The record demonstrates that the explanation provided by the Court of Appeals of Indiana was reasonable as to why trial counsel was not deficient even though she did not pursue his concerns about the ATF's activities. These arguments present no basis for habeas corpus relief.

In addressing the claims raised in Ground 1-(1)[B], Ground 1-(3), and Ground 1-(5) that his trial counsel didn't impeach Ms. Welsh's testimony properly with information about her being compensated for her testimony as an informant and with her prior bad acts, the Court of Appeals of Indiana explained:

> Spears next claims that Zahn was ineffective because she did not depose various witnesses and call them to testify at trial. The evidence that these witnesses would purportedly have offered may be grouped into three main categories: 1) evidence that Spears was being set up for a gun charge; 2) evidence that Welsh was a drug addict; and 3) evidence that Welsh had committed crimes for which she had not been charged. Appellant's Br. p. 28.
> As discussed above, Zahn's strategy not to introduce evidence regarding the gun clip was reasonable. And offering witness testimony that Spears was being set up for a gun charge would not have furthered that

strategy. Also, Welsh admitted in response to Zahn's questioning, that she was an extensive drug abuser when the controlled drug buy took place. Any additional evidence pertaining to Welsh's drug use would have been cumulative, and therefore, likely inadmissible.

As to evidence that Welsh had committed crimes for which she had not been prosecuted, Zahn did make an attempt to convince the trial court to allow that evidence. The trial court made preliminary rulings that Spears would be permitted to introduce such evidence if he could establish a nexus between the lack of charges being filed and Welsh's cooperation in the prosecution. However, such a connection was never shown because the State did not offer Welsh any consideration for her testimony. [PCR] Tr. p. 55, 416-17, 426. Moreover, the trial court granted the State's motion in limine, thus preventing Sears from offering such evidence.

In any event, Zahn did impeach Welsh with her robbery conviction that is permitted under Indiana Rules of Evidence 609(a). In sum, Zahn cannot be said to have been ineffective for not presenting evidence from witnesses whose testimony was irrelevant and would have been in violation of the trial court's order in limine.

DE 10-3 at 17-18.

Finally, Spears argues that Zahn was ineffective because she failed to present evidence that the State had declined to prosecute Welsh for several crimes she had committed. Spears contends that the State's decision not to prosecute Welsh was to obtain her testimony against Spears. However, as noted above, the trial court ruled that such evidence would be admissible only if the defense could establish a nexus between the State's failure to prosecute and Welsh's testimony at trial. The trial court also granted the State's motion in limine prohibiting such testimony.

The record shows that the police officers who had investigated the alleged crimes had been deposed, and their deposition testimony did not support Spears's theory that the State declined to prosecute Welsh in exchange for her testimony. It was clearly established that the State did not offer Welsh any consideration for her testimony. In light of the circumstances, simply offering the testimony of various witnesses who claimed that Welsh committed crimes would not have established the nexus required to make the desired impeachment evidence admissible. And Zahn did not introduce such evidence because the trial court's rulings prohibited her from doing so. Thus, Spears has failed to show that Zahn was ineffective on this basis.

DE 10-3 at 20-21.

Mr. Spears argues that Ms. Welsh could have been. but wasn't, prosecuted for several crimes. He argues that the circumstances demonstrate she must have been promised leniency in return for her testimony. He argues that Ms Welsh and the law enforcement officials all were lying when they denied that any promises were made. But the deputy prosecutor testified during the PCR hearing that Ms. Welsh didn't receive any consideration for her testimony. She further testified that, "every single police officer testified that they had not filed charges against Shannon Welsh and accordingly no consideration was given to her on any criminal cases." Additionally, Shannon Welsh testified at trial that she wasn't promised leniency in return for her testimony. Mr. Spears argues that her statement at trial that, "I'm not trying to get in no more trouble. I'm already in prison. I don't want no more time" proves that she must have received something in return for her testimony, but those remarks were made to explain why she had changed her mind and decided to testify moments after the trial judge told her that if she didn't testify, he could find her in contempt and sentence her to up to 180 days in jail. The record demonstrates that the explanation provided by the Court of Appeals of Indiana was reasonable as to why trial counsel was not deficient even though she didn't impeach Ms. Welsh more fully. These arguments present no basis for habeas corpus relief.

In addressing the claims raised in Ground 1-(1)[C] that his trial counsel didn't challenge the controls police used during the drug buy, the Court of Appeals of Indiana

explained that counsel raised this claim in a motion to suppress before trial. Then she preserved the objection at trial.

> As for the motion to suppress, Spears contends that Zahn failed to object at trial and reassert the argument at trial. However, the record shows that Zahn did object at trial but the objections were overruled. In short, Zahn preserved the issue for appeal, and we did, in fact, address the issue in Spears's direct appeal. <u>Spears</u>, slip op. at 3-5.

DE 10-3 at 17. This is a reasonable explanation of why Mr. Spears's counsel was not deficient in challenging the controls utilized during the drug buy.

In addressing the claims raised in Ground 1-(2) that his trial counsel didn't properly cross-examine and impeach the police officers, the Court of Appeals of Indiana explained:

> As for Spears's contention that Zahn failed to accurately impeach the police officers for alleged inconsistencies among the depositions, suppression hearing, and trial testimony, we initially observe that the nature and extent of cross-examining a witness is a matter of trial strategy that is left to trial counsel. <u>Waldon v. State</u>, 684 N.E.2d 206, 208 (Ind. Ct. App. 1997).
>
> The record shows that Zahn prepared for cross-examination by reading the State's witnesses' deposition and suppression hearing testimony. Zahn identified inconsistencies, particularly regarding the various "controls" that pertained to the buy, and cross-examined the State's witnesses about them. Tr. p. 127-35, 292-305. Zahn impeached Welsh, Detective Duke, and another officer with inconsistencies between their deposition and trial testimony. Id. at 127-35, 314-15, 381, 384. As noted above, Zahn chose not to impeach Detective Duke with every inconsistency between his previous testimony and his trial testimony because she believed that some of Detective Duke's trial testimony was favorable to Spears.
>
> In short, the record demonstrates that Zahn's cross-examination strategy was a deliberate choice that we will not second guess, and Spears has failed to rebut the strong presumption that Zahn's cross-examination was a reasonable exercise of professional judgment. <u>Stevens v. State</u>, 770 N.E.2d 739, 746 (Ind. 2002). As a result, the post-conviction court did not err in denying Spears's petition for post-conviction relief on this basis.

DE 10-3 at 14-15.

Mr. Spears argues that Zahn didn't "impeach Duke on the fact that Duke destroyed the cassette tapes and created his own versions of the compact disks . . . by inserting his own versions of the conversations between Shannon and Spears inside the house" (DE 18-1 at 38), but Mr. Spears hasn't cited to anything indicating that Detective Duke destroyed the original tape or that he altered the compact disk copies by inserting additional dialogue. Mr. Spears argues that Ms. Zahn did not impeach Detective Duke about his having "admitted he could not understand what had been said in the house," but Detective Duke didn't say that during his deposition. What he said was, "The wire was fairly clear until she entered into the residence." Then at trial, after admitting that the recording in the house was fuzzy and scratchy, he testified that "I heard the majority of the conversation. Some of it was inaudible." Mr. Spears argues that Ms. Zahn didn't impeach Detective Duke "on the fact that he took Shannon to a Hardee Restaurant to meet with prosecutor South for the purpose of making a deal for Shannon's cooperation," but Mr. Spears hasn't cited to any evidence indicating that this allegation was known to either him or his trial counsel until after his trial. Indeed, he argues that her statement was discovered only after the trial concluded. Thus, the record demonstrates that the explanation provided by the Court of Appeals of Indiana was reasonable as to why trial counsel wasn't deficient in her cross-examination of the police officers. These arguments present no basis for habeas corpus relief.

In addressing Mr. Spears's claims raised in Ground 1-(4) that his trial counsel did not challenge the recordings, transcript, and authentication of the drug buy audio evidence, the Court of Appeals of Indiana explained:

> Spears next argues that Zahn was ineffective for failing to introduce the original cassette tape of the buy into evidence, even though he specifically acknowledges that the original recording was lost or erased before Zahn received Spears's file from a previous defense counsel of record. Spears does not explain the efforts that Zahn allegedly failed to make to retrieve the lost tape or what measures she could have taken to locate the missing recording. Therefore, Spears has failed to show that Zahn's performance in this regard was deficient. The record also does not support Spears's contention that Zahn failed to challenge the accuracy and reliability of the tape recording. An unenhanced copy of the tape was admitted into evidence, and part of Zahn's trial strategy was to challenge the admissibility of the recording on the basis that it was inaudible. Therefore, contrary to Spears's contention on appeal, Zahn was not ineffective for failing to object to the lack of expert testimony to authenticate the recording. The tape admitted was not enhanced and Detective Duke, who listened to Welsh and Spears during the buy, authenticated the tape by testifying that he had reviewed the tape and that it was accurate. This was a sufficient foundation to render the recording admissible. Indiana Evid. Rule 901(a), (b)(1).
>
> Spears also maintains that Zahn should not have agreed to allowing the entire tape of the controlled buy to be played for the jury. However, Zahn had tried to have evidence of a family feud introduced into evidence that would explain Welsh's motivation for participating in the controlled buy. Zahn's apparent strategy was to show that Welsh had ulterior motives to lie about buying drugs from Spears, part of which was the apparent bad blood caused by Welsh's participation in ransacking Spears's residence that was discussed during the controlled buy. Zahn's insistence on having the entire recording played to the jury was a method of placing this information before it.
>
> Spears maintains that he was prejudiced because the recording contained unspecified "false and prejudicial allegations of misconduct." Appellant's Br. p. 31. However, Zahn's apparent strategy was that any potentially prejudicial content on the recording would be overshadowed by the feud evidence that dovetailed into the overall entrapment defense. Again, we decline to second guess Zahn's strategy. State v. Moore, 678 N.E.2d 1258,

> 1261 (Ind. 1997). As a result, Spears's claim that Zahn was ineffective on this basis fails.

DE 10-3 at 18-20. This is a reasonable explanation of why Mr. Spears's counsel wasn't deficient as to the audio evidence of the drug buy. This argument presents no basis for habeas corpus relief.

In his traverse, Mr. Spears tries to assert another instance of his trial counsel's ineffectiveness. He argues that she should have introduced the police officer's depositions and suppression hearing transcripts into evidence during the trial as impeachment evidence. Though it isn't proper to raise new claims in the traverse (Section 2254 Habeas Corpus Rule 2(c)(1)), even if he had presented this claim in his original petition, it wouldn't have been a basis for habeas corpus relief because the Court of Appeals of Indiana addressed this claim and refused to second guess counsel's trial strategy:

> Spears also claims that Zahn was ineffective because she should have entered the statements, depositions, and testimony of unspecified witnesses into evidence so they could have been properly impeached. However, Zahn did not believe that admitting the documents themselves into evidence was the proper method of impeaching the witnesses. Indeed, Zahn cross-examined the witnesses, and Spears has failed to show that this method of impeachment was improper. Again, we will not second guess Zahn's strategy, and Spears's claim fails.

DE 10-3 at 16. This is a reasonable explanation of why Mr. Spears' counsel wasn't deficient for not having introduced those depositions and transcripts. Even had this argument been properly presented in his habeas corpus petition, it wouldn't present a basis for habeas corpus relief.

Because the Court of Appeals of Indiana wasn't unreasonable in finding that Mr. Spears' trial counsel wasn't deficient as to any of his individual claims, there are no cumulative effects to evaluate. *Cf.* Malone v. Walls, 538 F.3d 744 (7th Cir. 2008) quoting Hough v. Anderson, 272 F.3d 878 (7th Cir. 2001) ("[P]rejudice may be based on the cumulative effect of multiple errors. Although a specific error, standing alone, may be insufficient to undermine the court's confidence in the outcome, multiple errors together may be sufficient.") Therefore, Ground 1 presents no basis for habeas corpus relief.

GROUND 2

In Ground 2, Mr. Spears argues that he was denied the effective assistance of appellate counsel for three reasons:

(1) Appellate counsel failed to properly argue the entrapment defense on false evidence when counsel overlooked the fact that the police action against Spears started with the ATF scheme to return Spears to prison for possession of illegal gun accessories that were planted in his house by a paid informant, and when that scheme failed, then State police officers arrested Spears immediately thereafter for allegedly selling his prescribed medications to his niece, the paid informant, who received immunity from prosecution in exchange for her cooperation.

(2) Appellate counsel failed to properly object and challenge the unauthenticated disks that were played for the jury, when the lead detective was the person who reproduced the alleged and distorted tape recordings unto compact disks.

(3) Appellate counsel failed to present the official misconduct of the trial judge, prosecutor, and police officers. On the trial record, the prosecutor and police officers were caught in numerous lies and distortions of fact. The prosecutor and lead detective denied that they had a secret meeting with Spears niece, and arranged a deal whereby the niece would not be charged with numerous felonies in exchange for her cooperation in planting false evidence and for her testimony that Spears had sold his prescribed

medications to her for over one year, even though medical records indicated that Spears prescription was issued less than six months before the filed charges. Counsel failed to argue that the planting of false evidence is a violation of Rule 901 of the Indiana and Federal Rules of Evidence. The trial judge deliberately overlooked the misconduct of the prosecutor and the lead detective in this case.

DE 1 at 5-6.

Because the Court of Appeals of Indiana adjudicated these ineffective assistance of appellate counsel claims on the merits, habeas corpus relief can't be granted unless that adjudication was either legally or factually unreasonable. 28 U.S.C. § 2254(d). Even if a state court ruling is erroneous or incorrect does not necessarily mean that it is unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-521 (2003).

A claim of ineffective assistance of appellate counsel is subject to the Strickland analysis. Howard v. Gramley, 225 F.3d 784, 789-90 (7th Cir. 2000).

> Strickland provides the standard we apply on direct review of a claim of ineffective assistance. Where, as here, our review is of a state conviction under § 2254, we apply AEDPA's deferential standard as well, making our review "doubly" deferential as to those issues ruled on by the state court. Harrington v. Richter, 131 S. Ct. 770, 788, 178 L. Ed. 2d 624 (2011). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

Ruhl v. Hardy, 743 F.3d 1083, 1092 (7th Cir. 2014). To prevail on any of these claims of ineffective assistance of appellate counsel, Mr. Spears must show that his appellate counsel failed to present a "significant and obvious" issue on appeal. Howard v. Gramley, 225 F.3d 784, 790 (7th Cir. 2000). Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the

likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000). On the

prejudice prong, the petitioner must demonstrate that if the argument had been raised,

there is "a reasonable probability that his case would have been remanded for a new trial

or that the decision of the state trial court would have been otherwise modified on appeal."

Howard v. Gramley, 225 F.3d at 790. If the underlying argument has no merit, an

ineffective assistance claim can't succeed, because "[f]ailure to raise a losing argument,

whether at trial or on appeal, does not constitute ineffective assistance of counsel." Stone

v. Farley, 86 F.3d 712, 717 (7th Cir. 1996).

In addressing the claims raised in Ground 2 that his appellate counsel omitted

meritorious claims during his direct appeal, the Court of Appeals of Indiana explained:

> Spears next claims that Cornelius, his counsel on direct appeal, was
> ineffective because additional issues should have been raised, including the
> defense of entrapment and the official misconduct of the trial judge,
> prosecutor, and police officers. Spears maintains that false evidence was
> presented to the jury and that relevant evidence was concealed from the jury.
> As a result, he argues that these issues should have been raised on direct
> appeal.
>
> We note that the standard set forth above applies to both claims of
> ineffective assistance of trial and appellate counsel. Rhoiney v. State, 940
> N.E.2d 841, 845 (Ind. Ct. App. 2010), trans. denied. Our supreme court has
> recognized three types of ineffective assistance of appellate counsel: (1)
> denial of access to appeal; (2) failure to raise issues that should have been
> raised; and (3) failure to present issues well. Wrinkles v. State, 749 N.E.2d
> 1179, 1203 (Ind. 2001).
>
> When a petitioner claims that he or she was denied the effective
> assistance of appellate counsel because various issues were not presented, we
> are particularly deferential to counsel's strategic decision to exclude certain
> issues in favor of others, unless such a decision was unquestionably
> unreasonable. Taylor v. State, 840 N.E.2d 324, 338 (Ind. 2006). However, even
> if we determine that counsel's choice of issues was not reasonable, a
> petitioner must demonstrate a reasonable probability that the outcome of the

direct appeal would have been different in order to prevail. Id. We must determine "(1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the issues that were not raised are clearly stronger than the raised issues." Gray v. State, 841 N.E.2d 1210, 1214 (Ind. Ct. App. 2006). Ineffective assistance of counsel is rarely found when the issue is failure to raise claims on direct appeal. Taylor v. State, 717 N.E.2d 90, 94 (Ind. 1999). This is so because the decision about what issue or issues to raise on appeal is one of the most important strategic decisions that an appellate counsel makes. Bieghler v. State, 690 N.E.2d 188, 193 (Ind. 1997).

In this case, Spears argues, among other things, that Cornelius was ineffective because she did not "properly raise the entrapment defense on the planting of false evidence, and for failing to properly argue that the planting of false evidence is in violation of rule 901." Appellant's Br. p. 34. Presumably, Spears is contending that Cornelius should have argued on direct appeal that the State did not rebut the gun clip entrapment defense. However, as Cornelius explained to Spears during the consultation leading to his direct appeal, such a claim could not be raised because there was no evidence developed at trial to support it. Tr. p. 236-37, 239-40, 243.

Indeed, arguments raised on direct appeal must be based on matters that are contained in the trial record. Turner v. State, 508 N.E.2d 541, 543 (Ind. 1987). Cornelius did argue that the State had failed to rebut the drug buy entrapment defense based on the evidence in the record. Spears, slip op. at 10-12. And our review of the record demonstrates that Cornelius did not fail to "present this issue well." Bieghler, 690 N.E.2d at 193-95.

Spears also claims that Cornelius was ineffective because she did not challenge the admission of the controlled buy recording, the alleged misconduct of the judge, prosecutor, and police officers in "misrepresenting facts regarding the planting of false evidence," and numerous other claims of misconduct. Appellant's Br. p. 34.

Notwithstanding Spears's contentions, Cornelius raised four issues on direct appeal, including challenging the admission of evidence procured incident to Spears's arrest, the admission of the recording of the buy, the evidence negating his entrapment defense, and the appropriateness of the sentence. Spears, slip op. at 2. And through these efforts on appeal, Spears's aggregate sentence was reduced from twenty-eight years to twenty years. Id. at 12-14.

Part of Spears's burden on appeal is to convince us that the issues he claims that should have been raised—but were not—were clearly stronger than those that Cornelius did choose to raise. Spears fails to meet this requirement because he offers no argument comparing the merits of his

proposed issues to those that were actually raised. Thus, Spears's claim of ineffective assistance of appellate counsel fails.

DE 10-3 at 21-23. This is a reasonable explanation of why Mr. Spears' appellate counsel's performance wasn't deficient. This ground presents no basis for habeas corpus relief.

Because the Court of Appeals of Indiana was not unreasonable in finding that Mr. Spears' appellate counsel was not deficient as to any individual claims, there are no cumulative effects to evaluate. *Cf.* Malone v. Walls, 538 F.3d 744 (7th Cir. 2008). Ground 2 presents no basis for habeas corpus relief.

GROUND 3

In Ground 3, Mr. Spears argues that he was "denied fundamental due process and a fair trial by the official misconduct of the trial judge, prosecutor, and police officers." The Court of Appeals of Indiana found that he had waived this claim.

> Spears next argues that he is entitled to post-conviction relief because the evidence demonstrates that the prosecutor and the police engaged in various acts of misconduct, and that the trial court judge was biased against him. We need not address the merits of these claims because, as mentioned above, the scope of the post-conviction remedy is limited to issues not known at the time of the original trial or that were unavailable on direct appeal. If an issue was known and available, but not raised on direct appeal, it is waived. Timberlake v. State, 753 N.E.2d 591, 597 (Ind. 2001).
> Here, all of the claims that Spears raises regarding alleged judicial bias and prosecutorial and police misconduct could have been raised on direct appeal. Because they were not, Spears has waived these claims.

DE 10-3 at 24.

Mr. Spears argues "that the official misconduct of the judge, prosecutor, and the police was learned after Spears received the trial record and deposition and Suppression Hearings and was not known during trial, and was in fact newly discovered evidence after trial, especially the fact that Shannon had been taken to the Hardee Restaurant by Duke to meet South." The records of the adversarial proceedings were known to him before his direct appeal and could have been obtained through the exercise of due diligence, so they don't qualify as newly discovered. *See* Stephenson v. State, 864 N.E.2d 1022, 1050 n.13 (Ind. 2007) ("Evidence is newly discovered if the defendant shows that (1) the evidence has been discovered since the trial and demonstrates (2) due diligence in discovering and presenting such evidence." (quotation marks omitted)).

Ms. Welsh's statement about the Hardee Restaurant is different. The Court of Appeals of Indiana didn't find that it was waived. It addressed this claim on the merits and held that she was not creditable and that her statement did not warrant a new trial.

> In resolving this issue, we note that new evidence will mandate a new trial only when the defendant demonstrates that: (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial. Greenwell v. State, 884 N.E.2d 319, 328-29 (Ind. Ct. App. 2008). We analyze these factors with care, as the "basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized." Id. at 329.
>
> As for Welsh's attempt to recant her trial testimony, we note that a new trial is not warranted if the post-conviction court determines that the recantation is not credible. See id. at 329 (denying the petitioner a new trial

> based on the fact that the recantation of a witness who previously identified him as the murderer was inconsistent and implausible).
>
> In this case, the post-conviction court specifically found that Welsh's testimony at the post-conviction hearing was inconsistent with her suppression and trial testimony. It also determined that the testimony was somewhat internally inconsistent, in that Welsh stated that Spears did not sell her pills, but she admitted to leaving money on the table. The post-conviction court found this testimony to be "not credible." Appellee's App. p. 30. Because we defer to the post-conviction court's factual findings, and given that Welsh's post-conviction testimony was not worthy of credit, Spears has failed to meet one of the nine factors for assessing the value of newly discovered evidence. Therefore, his claim fails. Greenwell, 884 N.E.2d at 329.

DE 10-3 at 24-25. The record demonstrates that the explanation provided by the Court of Appeals of Indiana was reasonable as to Ms. Welsh's statement about the Hardee Restaurant.

Because the state courts found that Mr. Spears waived the claims of misconduct by various state officials, they are, for the purposes of this habeas corpus petition, procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 735 (1991). Though there are rare exceptions when it is possible to have a procedurally defaulted claim considered, Mr. Spears hasn't presented any arguments or explanations that indicate that he can demonstrate either cause and prejudice or a fundamental miscarriage of justice. See Richardson v. Lemke, 745 F.3d 258, 272 (7th Cir. 2014) ("Because the independent and adequate state law ground rule is prudential and not jurisdictional, we may excuse a procedural default if the petitioner can show both cause for and prejudice from the default or can demonstrate that the district court's failure to consider the claim would result in a

fundamental miscarriage of justice.) Because this court won't consider the merits of Ground 3, it presents no basis for habeas corpus relief.

## CERTIFICATE OF APPEALABILITY

Finally, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the court must consider whether to grant a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000). To obtain a certificate of appealability when the court dismisses a claim on procedural grounds, the petitioner must show that reasonable jurists would find it debatable (1) whether the court was correct in its procedural ruling and (2) whether the petition states a valid claim for denial of a constitutional right. Id. Mr. Spears hasn't made such a showing and will be denied a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED and a certificate of appealability is DENIED.

SO ORDERED.

ENTERED: May __20__, 2014

_____/s/ Robert L. Miller, Jr._____
Judge
United State District Court